THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NEDAL NABHAN, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:21-cv-253 |
| ) | |
| vs. ) | |
| ) | |
| INDIANA STATE POLICE ) | |
| and THOMAS A. BURGETT, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL**

Plaintiff, NADAL NABHAN, by counsel, for his Complaint for Damages and Request for Jury Trial against Defendants, INDIANA STATE POLICE and THOMAS A. BURGETT, states as follows:

**I.     INTRODUCTION**

This action is brought by Plaintiff, Nadal Nabhan ("Plaintiff") a Palestinian Arab American, against Defendants, Indiana State Police ("ISP") and Thomas A. Burgett ("Burgett") under the Civil Rights Act of 1964 (Title VII), for his claim of employment discrimination for the following reasons: 1) Denial of privileges, terms, conditions opportunities and benefits of employment based on account of Plaintiff's race and nationality. 2) Being subject to and victimized by a hostile and abusive work environment on account of Plaintiff's race and nationality. 3) Retaliation for opposing the unlawful discriminatory conduct of Defendants ISP and BURGETT. Plaintiff also sues Defendant BURGETT in his official and individual capacity under 42 U.S.C. §§ 1983 for, under color of state law, unlawfully denying Plaintiff equal access to rights, privileges and

1

immunities secured by the Equal Protection Clause of the Fourteenth Amendment to the Constitution *and its laws.*

## II.     JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331 and 1343 (3) and (4), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.  Therefore, the Court has jurisdiction to try the case and has personal jurisdiction over the parties.

2. Plaintiff resides in Portage, Indiana, Porter County.

3. To the best of Plaintiff's knowledge and belief, during the relevant period, Burgett, resided in Johnson County, Indiana.

4. All actions which form the basis of these claims originated in Portage, Indiana.

5. Plaintiff has exhausted his administrative remedies by timely filing an EEOC Charge. Plaintiff received the EEOC's Right to Sue letter, dated May 18, 2021, on May 18, 2021.

6. Plaintiff filed his Title VII claim within ninety days of receiving the EEOC's Notice of Right to Sue.

## III.     PARTIES

7. At all times relevant to this action, Plaintiff resided in Porter County, Indiana and was employed by the, Indiana State Police as a Commercial Vehicle Enforcement Officer and Compliance Review Investigator.  Plaintiff performed work duties throughout the State of Indiana.

8. At all times relevant to this action ISP was and is a State wide Law Enforcement Agency and conducted business throughout the State of Indiana including Porter County

9. At all times relevant to this action, upon information and belief, Burgett resided in Johnson County, Indiana. Defendant Burgett was employed by ISP and performed work duties throughout the State of Indiana.

### IV. SUPPORTING STATEMENT OF FACTS

10. Plaintiff incorporates by reference paragraphs 1 through 9 above as if fully stated herein.

11. Plaintiff was hired by the Indiana State Police in 2007 as a Road Trooper.

12. In 2012, Plaintiff was assigned to a "drug interdiction" team. During this period, Plaintiff worked with the "High Intensity Drug Trafficking Area" Federal Task Force.

13. In 2014, Plaintiff applied for and was assigned to work as a "Commercial Vehicle Enforcement Officer".

14. On or about May 2019, Plaintiff applied for and was assigned work as a "Commercial Vehicle Enforcement Officer and Compliance Review Investigator". Said position/work is a highly coveted position within ISP.

15. Plaintiff always, during the course of his employment with ISP, rated satisfactory, above satisfactory, or high on annual performance evaluations.

16. The majority of Plaintiff's performance evaluations, throughout his career with ISP, were rated as "Superior Performance". Throughout Plaintiff's career with ISP, Plaintiff has distinguished himself as follows including but not limited to the following: Recognized as Trooper of the District in 2011; Certified as a Hostage Negotiator; served as a Field Training Officer; served as a First Aid and Tactical Medicine Instructor, and served as a member of the ISP Honor Guard.

17. Plaintiff never received low ratings on his annual performance evaluations during his career with ISP until after he began to report to Burgett.

18. Plaintiff worked in ISP's Motor Vehicle Enforcement Division for Five (5) years prior to Burgett becoming his supervisor (Sergeant) in November 2019.

19. Almost immediately after Burgett became Plaintiff's supervisor, Burgett engaged in the unlawful discriminatory employment practices against Plaintiff by creating and subjecting Plaintiff to an abusive discriminatory and hostile work environment on account of Plaintiff's race and national origin.

20. Burgett's unlawful discriminatory employment practices against Plaintiff began on or about December 2019 and continued for another eleven (11) months until on or about November 2020.  During said period, ISP knew or should have known of Burgett's unlawful discriminatory employment practices. Despite having knowledge of same, ISP refused to take any actions to stop Burgett from engaging in said unlawful discriminatory conduct.

21. On or about December 2019, Plaintiff prepared and submitted a compliance review report to Burgett. Upon review of said report, Burgett noticed a misspelled word and commented to Plaintiff that this is how they do things in the Gary area (referencing the city of Gary, Indiana which is predominately populated by African Americans) also the city in which Plaintiff's relatives reside.  Plaintiff was offended by Burgett's comment. It was apparent to Plaintiff that Burgett intend to offend him.

22. In or around December 2019, Burgett called Plaintiff while Plaintiff was on duty and played a rap song over the phone and stated to Plaintiff, "I got something for you," and asked Plaintiff, "This is your music right?"

23. Beginning in or around December 2019 and continuing throughout the above referenced eleven (11) month period in which Burgett was Plaintiff's supervisor, Burgett would frequently state to Plaintiff, on occasions Plaintiff experienced work related problems during the work day, that "maybe [the problems] it was the Taliban". Burgett constantly used this micro-aggression with Plaintiff to suggest that Plaintiff was somehow affiliated with a terrorist group.

24. In or around December 2019, Plaintiff began to frequently report Burgett's offensive and unlawful discriminatory conduct to another Sergeant outside of Plaintiff's chain of command. Plaintiff complained to the Sergeant because he was fearful that had he confronted Burgett with his concerns about Burgett's racially discriminatory conduct, Burgett would have retaliated against him.

25. Beginning on or about December 2019 and continuing throughout the above referenced eleven (11) month period in which Burgett was Plaintiff's supervisor Burgett would frequently ask Plaintiff sarcastically, "have I told you that I appreciate you today?" Burgett would ask Plaintiff same knowing that he had not told Plaintiff that that he appreciated him. Burgett would ask Plaintiff said question usually right after making the above described and other offensive and unlawful discriminatory comments to Plaintiff.

26. In or around February 2020, Plaintiff and Burgett paid a visit to United Transport International Inc. Company to conduct a compliance review. During the visit with the owner, who spoke with a heavy Eastern European accent, a ping sound was heard at which time Burgett asked the owner "was that a Russian Submarine ?" The owner of the company was offended at Burgett's (Russian Submarine) question. Plaintiff was also offended at Burgett's question.

27. Plaintiff reported Burgett's discriminatory culturally offensive conduct to Major Jerry Williams. Subsequent to Plaintiff reporting the same, Burgett began to retaliate against Plaintiff by taking Plaintiff off assignments considered career enhancing and relegated him to less important and coveted assignments.

28. In or around March 2020, Plaintiff and Burgett visited NR 1 Transportation Company to conduct a compliance review. During the visit, an employee of the Company, who had a heavy Lithuanian accent, was experiencing a problem with her computer. Burgett flippantly and insensitively stated to the employee "it's the Russians". The employee was visibly disturbed at Burgett's comment. Burgett knew or should have known that Lithuanians are particularly sensitive about Russia because of Russia's past history of occupying Lithuania. Plaintiff also reported this incident to Major Jerry Williams. Subsequent to making said report Burgett continued his harassment of and retaliation against Plaintiff.

29. On or about March 19, 2020, Plaintiff and Burgett were assisting in distributing Covid-19 relief supplies to hospitals across the state. Prior to implementation, Burgett had to compile a list of the names of the Troopers assisting with the project. Burgett asked Plaintiff for his name. Plaintiff gave Burgett his name "Nedal Nabhan". Burgett then asked Plaintiff "what's your full name?" Plaintiff then gave Burgett his full name "Nedal Samir Nebhan". Burgett again asked Plaintiff for his full, full name. Plaintiff then gave him the following name "Nedal Samir Mohammed Nebhan Dar-Abbid". Burgett asked a third time for Plaintiff's name. Plaintiff repeated his name to Burgett. Burgett then told Plaintiff that the reason he wanted Plaintiff's full name was that, upon arrival at the military base to pick up the supplies, they will pull Plaintiff aside and check him for terrorist activity. Plaintiff

reported this incident to another ISP Sergeant, who was on the military base and who was outside of Plaintiff's chain of command. No action was taken by ISP to address Burgett's unlawful discriminatory conduct.

30. Plaintiff found Burgett's phony insistence for his full name particularly offensive and unlawfully discriminatory because in his culture, Plaintiff's name, as provided to Burgett the first time, is designed to allow subsequent generations to trace their ancestry. Burgett's conduct constituted unlawful discriminatory employment practice and an attack upon Plaintiff's race, nationality and cultural heritage.

31. On or about July 2020 Plaintiff was on the telephone discussing a case with Burgett. During the discussion, Burget asked Plaintiff to repeat what he had just stated by asking, "what did you say? All I heard was turka, turka, durka, durka". The words "turka" and "durka" are offensive ethnic slurs mimicking middle eastern speech. Plaintiff was extremely offended as a result of Burgett's above described unlawful discriminatory conduct.

32. Plaintiff became weary of constant exposure to the above described racially discriminatory and hostile work environment. Plaintiff again reported this incident to another ISP Sergeant who was outside of Plaintiff's chain of command because Plaintiff feared Burgett would retaliate against him if he complained directly to Burgett. Yet, no action was taken by ISP to address Burgett's unlawful discriminatory conduct.

33. Plaintiff was routinely held accountable for work that his similarly situated White coworkers, although obligated and accountable for same, were not held accountable for.

34. Plaintiff continued to experience unlawful discriminatory employment practices by ISP including but not limited to the above described incidents until November 2020 (for approximately one year).

35. On or about October 30, 2020, Plaintiff met with Major Jerry Williams. During the meeting, Plaintiff reported all of the unlawful discriminatory conduct he had been subjected to by ISP and Burgett and requested to be assigned to a different supervisor. While Major Jerry Williams agreed to assign Plaintiff to a different supervisor, he did not do so until ten (10) days later. Meanwhile, Plaintiff continued to languish in an abusive and intensive racially discriminatory hostile and retaliatory work environment. The ongoing harassment consisted of, but was not limited to, attending a meeting which included Burgett's presence to discuss Plaintiff's memo requesting that he be assigned to another supervisor.

36. On or about October 2020, Plaintiff made his first written request to ISP to be removed from Burget's supervision so as to be protected against further harassment and/or retaliation. Plaintiff's request was ignored.

37. On or about March 30, 2021, Plaintiff was told by ISP that in order to be assigned to another supervisor (other than Burgett) Plaintiff would have to accept a less coveted and prestigious work assignment. Plaintiff reluctantly accepted the less coveted and prestigious work assignment (Commercial Vehicle Enforcement Officer working the road) in order to avoid continuing work in the abusive, unlawful discriminatory work environment under Burgett. As such, Plaintiff has been unlawfully discriminated and retaliated against by ISP.

## COUNT I.

**HOSTILE WORK ENVIRONMENT BASED ON RACE AND NATIONAL ORIGIN UNDER TITLE VII AS TO DEFENDANT ISP**

38. Plaintiff incorporates by reference paragraphs 1 through 37 above as if fully stated herein.

39. At all material times, Plaintiff was an ISP employee, and ISP, was Plaintiff's employer, covered by and within the meaning of Title VII.

40. Plaintiff was harassed based on his race and nationality by Defendant's agents and employees throughout the period of time described hereinabove.

41. Defendant subjected Plaintiff to pervasive harassment based on Burgett's almost daily incidents of harassment too numerous to recount.

42. Had Plaintiff been a white person, he would not have been racially harassed and or harassed based on his nationality.

43. This racial harassment and harassment based on Plaintiff's race and nationality has included, but is not limited to, racially and culturally demeaning, derogatory, and discriminatory comments and conduct of an offensive, racial, and pejorative cultural nature directed at Plaintiff. ISP created a racially discriminatory and hostile work environment.

44. The unlawful discriminatory actions of Defendant and its agents, representatives, and employees were intentional. ISP was aware of the pervasive harassment, based on Plaintiff's race and nationality, which resulted in a hostile work environment. ISP failed to take prompt effective action to protect Plaintiff from any ongoing harassment and/or retaliation.

45. The conduct of Defendant's agents and employees, described herein against Plaintiff constitutes unlawful discrimination, based on race and nationality, in violation of Title VII.

46. As a direct and proximate result of Defendant's unlawful actions against Plaintiff as described herein, Plaintiff has suffered, and will continue to suffer, injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss

of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## COUNT II.

### RETALIATION AGAINST PLAINTIFF AS TO DEFENDANT ISP UNDER TITLE VII

47. Plaintiff incorporates, by reference, paragraphs 1 through 37 as if fully stated herein.

48. Plaintiff's complaining about the ISP's unlawful discriminatory treatment constituted protected activity under Title VII of The Civil Rights Act of 1964.

49. Defendant and its agents have retaliated against Plaintiff for complaining about Defendants ISP and Burgett's unlawful discriminatory treatment in violation of Title VII of The Civil Rights Act of 1964.

50. As a result of engaging in said protected activity, Defendant and or its agents constructively removed Plaintiff from a coveted and prestigious position to one less coveted and prestigious. The same constitutes a violation of Title VII of The Civil Rights Act of 1964, 42 U.S.C., § 2000e et. seq.

51. As a direct and proximate result of Defendant's unlawful actions against Plaintiff as described hereinabove, Plaintiff has suffered, and will continue to suffer, injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

## COUNT III.

### FOURTEENTH AMENDMENT EQUAL PROTECTION AS TO DEFENDANT BURGETT (VIOLATION OF 42 U.S.C. § 1983)

52. Plaintiff incorporates, by reference, paragraphs 1 through 37 as if fully stated herein.

53. At all times herein, the individually named and identified Defendant herein intentionally discriminated against the Plaintiff based on his race and nationality in all manner of ways as set forth herein all in violation of 42 U.S.C. §1983;

54. As a direct and proximate result of the unconstitutional acts of the Defendant as alleged herein, Plaintiff has sustained a violation of his right to equal protection of the law and, as a result, is entitled to damages that include, but are not limited to:

   a. Damages for embarrassment, humiliation, outrage, mental anguish, fear and stress.
   b. Punitive damages in the amount of $5,000,000.00
   c. Compensatory damages; and
   d. Attorney fees and costs, pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, providing the following relief:

   a. Compensatory damages in whatever amount that Plaintiff is found to be entitled;
   b. An injunction requiring Defendants to cease and desist all unlawful discrimination based on race and nationality within the ISP;
   c. An injunction barring Defendants from taking any further discriminatory or retaliatory actions or omissions against Plaintiff;
   d. An award of reasonable attorney's fees, expenses, and costs;

e. Other appropriate nondiscriminatory measures to overcome the above described discrimination; and,

f. Such other and further relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, by counsel, requests a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Tae Sture*
Tae Sture, Attorney No. 25120-29
Attorney for Plaintiff
Sture Legal Services, LLC
155 East Market Street, Suite 501
Indianapolis, IN  46204
Ph:     (317) 577-9090
Fax:    (317) 577-1102
Email: tae@sturelaw.com